Dear ye, dear ye, this Honorable Appellate Court for the 2nd Judicial District is now back in session. The Honorable Mayuri S. Shasta, Presiding Judge. Good morning. You can be seated. Will you call the case? Yes, Your Honor. It's the second case that we've got this morning. I move that 22-0219, Karen Wilcox and Kyle Wilcox, plaintiff's appellants, v. Heather White, Coldwell Banker Residential Real Estate, LLC, defendant's appellees, arguing on behalf of the appellant, Mr. Robert S. Grigger, arguing on behalf of the appellee, Mr. James French. Good morning. Good morning.  I am. Good morning. My name is Robert Rita. May it please the Court that my arguments here today will have some weight. I know the Court read all the briefs. I don't want to belabor too many points, but I would like to go through a couple of thoughts. We all can agree on the res judicata elements. They're pretty straightforward. We kind of, it's pretty straight up. Final judgment on merits, identity cause of action, and identity of parties and privies. So why don't we have that here? Which one particularly? Or all three? Well, res judicata. Okay. I'll pick them up. If they don't mind, I'll go backwards. So the party and privies is the one that kind of threw me off a little bit when I was going through this. One of the things that, when you look at that, the original case that was against Carroll. Before you get into that, let me answer this. In your opening brief, you did not challenge the element of the identity of the parties. You do so only in your reply brief. That's correct. That argument is forfeited. I'm sorry, say that again? That argument is forfeited then, is it not? I don't think so, as long as it's raised in the briefs throughout the three documents. That's not the case. Points not argued are forfeited, and they cannot be raised in a reply brief. Okay. I mean, do you have a case that suggests that you can make an argument that you did not raise in your opening brief? I do not with me today, and I don't think there is one, if I'm correct. I think I'm correct on that one. Forfeiture is, you know, the courts can relax. Is there a reason we should relax the rule and entertain your argument? The only excuse I could come up with is, given the totality of all the facts in this case and how we're going to get into a fairness argument as we go down the line, that would be the only thing that I could say. Mr. Reeder, would you do me a favor? Sure. Take the mic down just a bit. There you go. Better? Yes. Okay, great. Well, let me just say this one thing with the parties and privies, whether the court's going to take it under consideration or not. In the underlying case, it's pretty obvious that it was basically Wilcox versus Carolyn Wright. Pretty simple. The new case is Wilcox versus Heather Wright. So just on its face, they're different parties. Did you represent the plaintiffs in the 2018 case? I did. I did. And why wasn't there any discovery done? I mean, you could learn the issue that you learned many years later if you had just done a deposition of the agent, and especially where the agent is the defendant's daughter-in-law. I didn't know that, and I'll tell you why. The mom, which was Carolyn Wright, was in a dementia nursing home. Exactly. Yeah. So when the mom is in a nursing home, the plaintiff is in a nursing home, and not the plaintiff, meaning the defendant. Yes. The seller is in a nursing home. Yes. Why don't you turn to the real estate agent and ask questions about why is this disclosure form filled out? It's false. Because? Wouldn't that be a common step? It could be, yes, tactically, or if there was a bigger case in deposing multiple people, the answer is yes. In this particular case, it was a default judgment. We went to trial. She never appeared. This was a stipulated judgment. A stipulated bench trial. Yeah. So it wasn't like there was a lot to be done in it. And to be perfectly honest, I personally, whether that's irrelevant or not, but I personally had no thought of Carwell Banker being involved in a bad scenario. I live in the same town. I know a lot of the realtors there. Maybe that was wrong, but it didn't even dawn on me that that would be a problem. Go ahead. I'm diverting. I'm not diverting. So in the other one case, the real estate disclosure report was delivered. The client says place floods, obvious, video, pictures. That's how you win the case. I didn't have to do anything else. It just was clearly obvious. So that's how that happened. There was no thought at all to go against the broker or the realtor or anybody like that until like 18 months later. Even though the seller had dementia? Well, my cause of action was against the seller. Right. And she had dementia? Yeah. Okay. So you had to prove that her statements that were in the disclosure form were false, correct? I did, yes. And I had evidence outside of the realtor. I didn't need the realtor or the brokerage in any way, shape, or form to prove up my singular case. Seller to buyer, which I guess in this case dovetails into the other elements, which is identity and cause of action. Right. So the way I look at it and the way I think the case law is putting out is over here I've got a seller and a buyer on a vertical, kind of like the Carl Llewellyn kind of analysis. So that cause of action deals with the transfer of a deed from a seller to a buyer. And then the seller's representations to the buyer in furtherance of transferring the deed. That's all that is, a pretty simple case. I think the euphemism is they call them a wet house case or something like that. So we basically had them. So I wasn't worried about that kind of a – I was waiting for it to get to a trial. We did try to get to Carl Llewellyn's deposition, and they pushed off, pushed off, pushed off because she was in the hospital. They couldn't locate her. It was kind of really weird, but that's the point. So over here I'm thinking that's pretty simple. When you go over here, the other cause of action is basically you've got the buyer against the realtor, which is a completely distinct cause of action, and this is why. This is why there's no race judicata in your opinion. In my opinion, yes. In Illinois, realtors and brokers under the various statutes set in a completely separate and unique relationship to the buyer and the seller. It's not a principal and agent relationship, and that goes back to the privy stuff. Privies is not automatically – if there's a principal and agent, it's not automatically a privy. But going back to the cause of action, they're separate and distinct. So the seller has an obligation to be truthful on the real estate disclosure report over here. The broker and the realtor have nothing to do with that report. If anything, all they're doing is transferring it, and sometimes it doesn't even go through the realtor. It goes from the lawyer to the lawyer. I mean, that's just pretty much common knowledge. But under Illinois law, because of this unique situation – and there's case law. I think I've got one later on here. The realtor has a responsibility, one, not to communicate falsehoods related to the condition of the property, and also, two, to disclose material defects, completely distinctly separate. And that's really why I think it's different. You're looking at it from an evidence-based view, and that has been rejected by the Illinois Supreme Court. I agree. It's a transactional test. Go ahead. And I do have the case. I agree with you there, yes. Okay. I don't agree with you. I accept what you're saying. Well, you acknowledge it. Yes, exactly. The argument just made is not favored by reviewing courts in Illinois. I agree. But even under the transactional test, we still have the same issues, which is, under the transactional test, yeah, it was a real estate closing, right? But the realtor is not part of the real estate closing. That's a transfer of a fee from a seller to a buyer. The realtor doesn't do anything for the agent. Now, I guess if the realtor — If you're looking at the entire transaction, the sale of the home, as you just acknowledged, under Illinois law, and actually this is pretty much the law across the country, the realtor does have a duty to not hide issues from the buyer. Yes. So why wouldn't there be discovery as to — because this woman who has dementia, the seller, could not have then filled this form out, and no one would trust it unless you asked who filled this out. She signed it. Yes. She signed it. Could she even get up and downstairs, do you know, the answer to that question? When was the last time she was in the basement? We don't know. That's correct. We don't know, right? That's correct. I don't know. So that's bad because the style of the case, and the court will see it in the record, is that it didn't go to an evidentiary hearing. There was no — the case just wound up being a prove-up at a bench trial. So it's almost a default case, I guess, not really literally, but that's the same style of the case. Well, can a default still be raised judicata? There's cases that go both ways on that, and that's the problem. And that's one of the reasons that I personally had a hard time preparing for this oral argument today because of all these different — you know, there's a lot of twists and turns in this particular matter. You argue that there was a, you know, the discovering that Heather Wright knew about the problem, that that was newly discovered, essentially? Yes. Last week, based on the deposition of the daughter? Yes. So that daughter that was deposed in the post-judgment collection proceedings, the enforcement suffered, she was like mom's rep during the case. So we eventually did that third-party citation against her, got a deposition going. And it was the mom's power of attorney. Yeah, exactly. So when she disclosed that, I was kind of — I was kind of shocked. I was like, oh, wow. And you cite Hayachi for the proposition that this was new evidence? Yes, that is correct. In Hayachi, it was not a new evidence. It was a change in the law. Right. It was a new fact. Yeah, that's where they lost the license. Right. That's correct. Okay. That's correct. But there are other cases that are around with regards to this new fact. But this is not a fact that was hidden by anybody. This is a fact that you just failed to discover, correct? Until afterwards, that is correct. But I had no duty to discover that because that's a third party. They're over here. I don't — the seller is the one who defrauded us. This stuff that happened with the realtor, that's way over here. I don't have to deal with that at all. That's a separate — You're trying to win your case, you mean? Right. To win my case, the realtor is a rogue. When you take a case like this case, and I keep going back to this, this woman had dementia. She had to have support. She had a call of attorney when you were engaged in litigation in 2018. She couldn't even come to court. So why would you not look into who helped her fill out this form? Well, to get to that point directly, I did not pursue that line of inquiry. I'm just being honest. I mean, lawyers all the time do it. You're looking for the other defendants, even though they have a named defendant, they filed most of her disclosure, a 224 or whatever, and you try to find out who else is responsible. But this was a default judgment. It's a stipulated bench. I'm trying to, like — I understand what you're saying. I totally do. Raised judicata applies to all claims that were raised in a previous action and any claim that could have been raised. Between the parties. Between those parties. Or they're privies. But now when you're talking about privies, the law is quite clear. Principal and agents are not privies. Quite clear. And then if you go the next step with that, once you get into the real estate, realtor, broker realm, that takes it way over here because now we've got all sorts of new duties related to that relationship. I'm not sure I answered your question. Counsel, I've got a related one. So you cite Atherton v. Connecticut General Life. In that case, it says a principal is not liable for an agent's tortious conduct unless the conduct is within the scope of the agency. How is the sale of the subject property here not within the scope? I mean, how is it within the scope or not within the scope of the employment? The agency being to effectuate the sale. Why don't you explain your position on that? This was another area that I had a hard time dealing with even this morning to try to figure that out. You just started dealing with this? No, no, no. I shouldn't say it like that. That's true. But again, a little more stress this morning at 4 o'clock in the morning. The agency for a broker is to facilitate a sale. That's it. The agency does not include any kind of reporting on the condition of the property. That's a condition proceeding that's normally put in a real estate contract that the buyer goes out to an inspector to figure that out, which is a whole other issue in this case that is not before the court. So I don't believe that when a seller goes to a real estate brokerage company and says, please list my house for sale, all that realtor has to do is bring a buyer. That's it. In fact, I don't think the realtor is even the one responsible for delivering their disclosure report. I think that's a legal document that's responsible for the seller and the seller's lawyer to transfer. The realtor has nothing to do with it. I'm pretty sure that's the case. I'm sorry. I wanted to just ask you one other question as to damages. So even assuming you were to have a case against the realtor, what damages remain that haven't already been compensated? It's not part of the record that there's been no compensation. Nothing's been paid. Well, there was something paid initially on the first case, right? No. No, that's why we went to the post-judgment proceedings. Oh, I see. So you were awarded a judgment, but the judgment hasn't been paid. Yeah, which really kind of bummed me out considering that the lawyer said, let's just end with the judgment. And then all of a sudden it's like, too bad. We gave all the money to the nursing home. That's actually what happened. I just don't know if I answered your question, did I? No, you didn't. Okay. Would you like to wrap up, Mr. Rita? Yes, I'll do it now. I think you argued that the claim was not based upon the real estate contract. It was based upon the disclosure report, so therefore fees weren't due? The underlying claim. Right. But not the current claim. I don't know if I'm answering. Okay. The only thing I've got to say at the end is the whole purpose of res judicata, the whole fairness doctrine. It's probably a doctrine, but, you know, res judicata is a great thing for courts for judicial economy. I think it's wonderful. Saves me, too. But in this case like this, res judicata should not be used to be able to cover up a fraud. And that's really the bottom line. And if I really can sum anything up here, that's what it comes down to. Thank you. Thank you, sir. You'll have an opportunity for rebuttal. Thank you. Mr. French. Thank you. Was there a fraud? Your Honor, I don't know that that's our question for today, but I think that gets back to the issue of we have to look at the record here to make that determination at this point, right? And what do we have before us in the record? We have the complaint. We have my client's motion to dismiss, right, with various attachments, including affidavits, certified copies of the previous complaint and court orders and things like that. And to get to fraud, one of the elements of fraud is if here specifically, did Ms. Wright know about this defect or defects at the time of the transaction? There's two points there. Before you go on, state your name, please. Yes, I got you right on time. I was about to jump right in. Go ahead. Thank you. Good morning. May it please the Court, Your Honor's counsel. My name is James French. James. Yes. I represent the Appellees Coldwell Banker Residential Real Estate LLC and Heather Wright. Of course, you can call me Jim if that was what you were wondering about. That's totally fine. I sort of lost my train of thought a little bit as to your question, so please redirect me from there. No, no, no. That's okay. You were telling us what we have before us today. Yes. Right, right. And so plaintiffs went in their response. Frankly, the burden shifted to the plaintiffs here, right? I think we can all agree on that, that my clients made a prima facie showing of race judicata in the trial court, so the burden shifted from my clients to plaintiffs to rebut that, right? And to do that, they had all these different tools at their disposal. They could have submitted affidavits. They could have submitted the affidavit of the sister. They could have submitted the affidavit of the person who took her deposition. If there was a transcript from the deposition, they could have submitted that. They had, you know, the opportunity to submit other evidence, anything for the court to consider, and they relied on their pleadings. And here their pleading was defective. And this wasn't a surprise gotcha moment in the appellate court where we're saying for the first time, you know, you didn't, your pleading was defective because you used this conclusion of knowledge without any facts to support it. That was put right in the beginning of our motion to dismiss. It was an issue right from the get-go. It was the first thing filed by my client other than my appearance. And when the burden shifts to them, they have to do something to overcome that burden. And you can't just say, Ms. Wright knew. And that's our way to overcome res judicata here. I don't think it's a huge logical leap to say that knowledge is a conclusion that must be supported by facts. I mean, we have trials every day in Illinois and across the country where the issue is what facts support the eventual conclusion that, for example, a defendant knew that he had an illegal substance. Or in this case, Ms. Wright knew that, knew about the defect. And there's really three ways in real estate defect cases where you would know that. You would have to show she saw the thing, the defect, the flooding, whatever you want to call it. Someone had told her about it. Or she reviewed some document, right, that talked about previous defects with the property, previous water intrusion with the property. We don't have any of that here. We just have that conclusion stated at least two times, once on information and belief, which can't proceed in a fraud case, and then once when we talk about the substance of that deposition. And it creates a situation where you have two hypotheticals, not hypotheticals, but there's two choices. Is this conclusion plaintiff's counsel's conclusion based on something that the sister said? Or was this the sister's own conclusion? You know, it's like double hearsay almost. It's I'm concluding her conclusion was conclusive, right? Did she provide any facts in her citation deposition to tell us that Ms. Wright might have known about this defect? And the answer is the record is absent of any of that proof, and it was plaintiff's burden when the burden shifted to go ahead and show us that there was some evidence to support their arguments. And I think I want to get back to something Justice Burkett said during the beginning here about forfeiture. The opening brief really only states two things. It really doesn't even say if we look at the three-part test. It doesn't – obviously no one's arguing that there wasn't a final judgment on the merits, right? And I would like to note this is not a default. It's a stipulated bench trial, and, of course, that term gets used a lot. But that doesn't – there's no assumption that because it's a stipulated bench trial it was not a contested hearing. I mean, if there's facts that are not in dispute and the attorneys want to argue the law, that happens all the time. You could submit an affidavit or a stipulation and say, hey, here is our universe of facts, and now we're going to argue their applicability to Illinois law. So there was a final judgment on the merits. Identity of the parties or their privies never brought up in the opening brief. And, frankly, I would argue today that identity of cause of action isn't even really brought up in their opening brief. Rather, the exceptions are brought up in their opening brief. And, you know – So they brought up in that complaint in the trial court? That the parties and their privies are – yeah, they contested essentially everything in the trial court, I believe. But that's not – that's not – as far as forfeiture is concerned, we have to look at Supreme Court Rule 341H7, which says in your opening brief, you know, plaintiff, you're responsible for determining – for framing the arguments here for this appeal. And when they did that, they chose two things. First, there was new facts that came to light following the prior action establishing a new basis for plaintiff's claim. And second, that they clearly and convincingly show that policies favoring preclusion are overcome for some extraordinary reason. One and two. That's it. Everything else is forfeit. Okay? Well, I think forfeiture is a limitation on the parties normally. Correct. Correct. But, you know, to do that bakes my clients into responding in their response brief just to what you – the arguments that you framed here. And that's the reason for the rule, obviously, right? Because I'm not going to get another bite at the apple here. I'm not going to get a chance to reply to your reply. And when they frame the arguments as they did, they're stuck there. And that's where I want to leave them. I want to leave them with those two arguments because that's what the Illinois Supreme Court rules have told us to do. Those are mandatory rules. As we all know, they're not suggestions for counsel on how to draft an effective opening brief. So, you know, I don't know if I need to quote this specific case, but Chicago Housing Authority case going back to the knowledge aspect of Ms. Wright states that conclusion unsupported by facts are not to be taken as true in ruling on a 619 motion. So you can basically strike those items from the complaint themselves. We're supposed to disregard them. That's what the case law tells us to do. If we look at, and that in itself eviscerates plaintiff's claims, right? Because if we look at the reasons supporting their first and second argument in their opening brief, it's based on that conclusion of knowledge, okay? The first one is there are no facts. Well, there's no fact for us to look at. There's no fact, frankly, for your honors to look at when you're reviewing the record here, okay? Wouldn't the fact be new if it was proven that the agent had essentially covered up the defect? Wouldn't that qualify as a new fact? No. Not according to the case that the plaintiff cited, I think it's the Hayashi case, talks about no intervening facts or conditions, I think is the other one. That one was a change in the law. So there was an intervening, something that temporarily happened, a novel event that happened after the first judgment was entered. And that's not what we have here. We have something that existed. You have a new discovery of an old fact. Correct. New discovery of an old fact. And I think the cases that I cited in my response brief talk about the type of situations where you have this novel event. You know, there's a new default on a mortgage. I think there's a long line of cases that talk about that. This is something else. This is something new that's happened after we've already had finality to the earlier proceeding. And when you go to the second thing, the extraordinary reason favoring preclusion to – I'm sorry. I'm going to start that again. That the plaintiff has clearly and convincingly shown policies favoring preclusion are overcome for some extraordinary reason. Same thing. There's no facts to support their allegation that there was some knowledge here, okay, on behalf of Ms. Wright. Even if there was, you know, they had a judgment. They cite the Boyd case, which in that case there was already a finding that there was no – there was no identity of the parties in their privies. And they went on to also conclude that there was a problem because basically the – I always get confused with mortgagee and mortgagor. But the owner of the house was going to be able to live there mortgage-free. And that was unfair to the company that issued the mortgage. This is not the situation here because they got a full judgment after their stipulated bench trial. Now, the Plaintiff's counsel talked today about their inability to collect on that judgment. But that's not in the record. And when the burden shifted to them, if they wanted to make that point, they could have. Is that relevant to today's case? I don't think it is relevant. But if you take that conclusion, it was one of the basis for the Moy court. And one of the items brought up by Plaintiff's counsel today, they already have the thing that they're looking for in this case. It's the exact same fraud claim. This is not consumer fraud claim where they can now, you know, get their attorney's fees or something like that. I have a question on the privies. What was the scope of the agency? That's a wonderful question. And, you know, I'm not going to try to dodge it, but it's not the basis of this appeal. You know, it's a. If we were to reach the issue, what would your position be? That there was privity between the seller and Ms. Wright, her agent, and Coble Banker, her brokerage. And that was the point that I made by submitting the affidavit from Ms. Wright at the trial level. That, hey, here is the contract that governs their relationship. You know, Ms. Wright is specifically defined as the designated agent, and I'm going to go out there and, you know, market and sell your house for you in an effective way. And obviously there's a contract signed by both Ms. Wright and Coble Banker Residential Real Estate LLC. So, you know, it is their parties and their privies. I think the Altair case, if we want to go down this path a little bit, did discuss that. In that case, there was an escrowee, and the agency relationship determined that it was the parties and their privies when you were dealing with the escrow. So I think there is definitely a basis for it. And so that's based on the determination of what the scope is. So what is the scope? Is it to sell the property? Is it to oversee disclosures? How far does that scope apply? Well, you know, it depends how far the agent goes. Right? I mean, you have your basic principles of the real estate license act, and you have your basic principles of the marketing agreement signed by the parties. But, you know. Do we have any evidence how far the real estate agent went in this case? We do not. And it gets back to the point of the record that we have before us, Your Honors. You know, even if, you know, it all comes back to this allegation of the knowledge of misright. Okay? And the incomplete record that we have to support plaintiff's claims here. And they need facts. They need to support it with facts. They had unique access to a lot of those facts because they were a participant in the former case. And they could have shown what they knew, how they knew it, what they didn't know, and why they didn't know it. But they chose instead to rely specifically on their pleadings. And their pleadings were inherently deficient. They asked in their opening brief, you know, as a matter of law, based on these two points, to remand the case back to the, to find that the law supports the plaintiffs, to remand the case back to the trial court. And that fails based on the record. That one doesn't fail based on the record, even if you assume that they're correct, that there is knowledge. There is not this new, unique set of facts. And there is not an extraordinary reason to send it back. They already have their damages covered by a prior judgment. The record doesn't show that that was uncollectible. In the opening brief, they also talk about the discovery rule and how that favors them. And they go into this discussion of how that might favor the plaintiffs. But, in fact, it favors my clients because the discovery rule says, hey, once you find out you're injured, then the time starts to run. I don't think anybody could argue that they didn't know they were injured at the time they filed the previous lawsuit. And there's cases out there, the Janicek case, I'm sure I'm butchering the pronunciation of that name, that says, hey, this isn't specific to a specific defendant. You don't have to know that, you know, James French injured you. You just have to know that someone did. And, of course, that happened in 2018 when they filed their initial complaint. Okay? So, obviously, that favors my clients. This knowledge, if it existed, which I am not saying that it does, if it existed, it was there in 2018. Had defendants done the deposition of the power of attorney, the deposition of anybody, had they simply asked the question, they would have found their answer. And they can't overcome race judicata now based on evidence that's before the court. On the identity of the cause of action. Correct. If I might have one more minute just to kind of wrap up my thoughts. You know, we can't be in a situation where we reward a party for going out after their original case concluded, okay, now I'm going to see if I can find something new, essentially to reopen the door that has been closed by the court. Otherwise, that would happen in every case. Win or lose. You could say, hey, I won my negligence claim. That's great. I'd like some punitive damages now. I'll send an investigator out there to see what I can come up with. And that's not what the law is in Illinois. Litigation has to have an end to it at some point. So one question, race judicata is an equitable doctrine. What about the fundamental unfairness argument made by your opponent, that essentially the prior case went forward against an uncollectible defendant, a presumptive judgment was entered, and then the collectible turns out to potentially have committed a fraud. What bearing should we give that if, in fact, it were to be shown? Yeah, so you first of all, the collectible, uncollectible, I don't think is supported by the record. So we can't even take that into consideration, right? But let's just say, you know, defendant one, there's a case there. You find out later defendant two may have committed fraud to either aid or, you know, completely run roughshod over the first defendant. That's only discovered later. Again, equitably, what should we be doing with that kind of analysis? Sure. I have two responses. One may not directly answer your question. The second one will. The first response is just going back to the knowledge, which is they haven't put us in that universe. You still have to prove that. Correct, correct. When the burden shifts to the plaintiffs to prove this, and it's not we just weigh the fairness. It's you have to clearly and convincingly convince the court, to use the same word twice, that there is an extraordinary reason to do this. So it's a high burden. It's not just, you know, a scintilla of fairness over the edge there. So you have to prove it. And even if you did, let's use plaintiff's own example of the discovery rule. They discovered it. They discovered it in 2018 that they had been injured by potentially a wrongful act. They thought that, hey, this is the path we want to take. That was their litigation strategy. They didn't do any depositions of the power of attorney, of the sister, of the daughter-in-law, of representative from Copenhagen. They could have terminated the litigation at that point, voluntarily dismissed. Correct, correct. And then done some due diligence and brought another claim. Sure. I mean, they had the cornucopia of options. You could have done depositions, subpoenas, interrogatories, request to produce, request to admit. You could have sent someone over to Copenhagen and just asked the question, you know, pick up the phone. We don't have proof of any of that. So we don't have the means necessary to show that the rights due to codifying should be overcome for some extraordinary reason. Any further questions? Thank you for your time, Your Honor. Thank you. Thank you. Mr. Rita, you have opportunity for recess. There isn't a lot. The one, when counsel brought up the concept of that escrow dispute case, that was the reason that they were, the brokerage was tied into that particular case, was because they were holding the escrow money. This is not an escrow dispute case. So that's one of the issues. The other one was, when he talks about burden shifts, there is a lot that goes on. But the most important, the most important part, at least under the Deutsch case that they cite, the Deutsch Bank National Trust case, the black letter law in the case, generally the rule in Illinois is that rights due to cod extends only to the facts and conditions as they were at the time a judgment was rendered. My client had no idea that this concealment happened with the real estate realtor. What about the argument that counsel made that once he established a preemptive case that rights due to cod should apply, you didn't rebut that with any facts, no transcripts, no affidavits? Because the motion was based upon the pleading itself. It wasn't a summary judgment action where the judge is looking for evidentiary documents. It was strictly based upon the complaint, and that's it. So it's not like a motion to dismiss. And that kind of dovetails into when counsel was arguing about that we didn't plead fraud, in particular to clear the clear and convincing hurdle. But the courts allow amendments to pleadings all the time. Well, isn't fraud a specific, you have to plead that specifically in the state of Illinois, do you not? You do, and you did. In the complaint, I think it was paragraph 16 or something like that, where they actually, we've talked specifically about it. I can go to that right now if I can get to it quick enough. Defendant, defendant, realtor, knowing you provide a false disclosure material facts in the disclosure report. That's 19. Provided material false, blah, blah, blah. It's in the complaint. But in any event, the court, if it's a motion to dismiss, routinely allows you to amend the pleadings. So I'm not really sure that the judgment, you know, fair to say the cause of action argument here today is really relevant to this appeal. And then as we go back to the fairness doctrine, which is what, you know, in fact, the appellee brought it up too. You know, the argument that the appellee is saying that we shouldn't award the appellant for X, Y, and Z. While the appellant is saying we shouldn't award the appellee for X, Y, and Z. But it all goes back to the fairness argument. And that's what I have to conclude on. And thank you for the time today. Anything further, gentlemen? Thank you. Gentlemen, thank you very much for your arguments today. We will take this case under consideration and render a decision in due course.